UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TANZANIA BAKER | CIVIL ACTION |
| VERSUS | NO. 04-3401 |
| FEDEX GROUND PACKAGE SYSTEM, INC. | SECTION "N" (3) |

## ORDER AND REASONS

Before the Court is the **Motion for Summary Judgment (Rec. Doc. No. 81)** filed by Defendant, FedEx Ground Package System, Inc. ("FedEX"). Plaintiff opposes the motion. For the reasons stated herein, **IT IS ORDERED** that the motion is **GRANTED**[1].

**I.    FACTUAL BACKGROUND**

Plaintiff, Tanzania Baker ("Baker"), is an African-American female. She was employed by FedEx from 1994 until she was terminated on October 24, 2004 for insubordination.

**II.    PROCEDURAL HISTORY**

On January 12, 2004, before Baker was terminated, she filed the first three charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In her first charge,

---

[1] The Court previously granted this motion and indicated that written reasons would follow. (See Rec. Doc. 109).

Baker specifically claimed to have been discriminated against on the basis of her race[2] and asserted that she had been threatened with discharge on three occasions in 2003. (Exhibit 11 to Defendant's motion). On April 14, 2004, Baker filed a second Charge of Discrimination with the EEOC, wherein she complained of being denied vacation pay and alleged discrimination based on race and retaliation. (Exhibit 13 to Defendant's motion). Baker filed her final Charge of Discrimination on February 19, 2005, alleging that she had been discharged due to unlawful retaliation based on her race[3]. Baker filed this charge *after* she filed this lawsuit. (Exhibit 28 to Defendant's motion).

On November 4, 2004, Baker filed this action against FedEx asserting claims of race and gender discrimination under the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, et seq., intentional infliction of emotional distress, hostile work environment, and retaliation under the Louisiana Whistleblower Statute, La. R.S. 23:967.

### III. LAW AND ANALYSIS

#### A. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See FED. R. CIV. P. 56©. See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are

---

[2] Baker also checked the boxes on the charge applicable to color and sex discrimination, and retaliation; however, she did not specify the particulars of her concerns as to these bases.

[3] Baker also checked the box on the charge applicable to sex discrimination; however, she did not specify the particulars of her concerns as to this basis of discrimination.

irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

Initially, the movant bears the burden of demonstrating the absence of material fact issues. *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). The movant is not required, however, to negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 323). If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. If the movant meets his burden, then the burden then shifts to the nonmovant, who, to avoid summary judgment, must go beyond the pleadings and designate specific facts that show that there is a genuine issue for trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). Of course, unsubstantiated assertions do not constitute competent summary judgment evidence. *Abbott*, 2 F.3d at 619 (citing *Celotex Corp.*, 477 U.S. at 324).

Before granting a motion for summary judgment, the district court must be satisfied that no reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 249; *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (stating that "the facts and inferences [must] point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict"). In determining whether a material issue of fact exists, the evidence and all inferences drawn therefrom must be considered in the light most favorable to the non-moving party. *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir.

2005)).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  *See id.*

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.")  Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. ), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."  *Little*, 37 F.3d at 1075.  Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party."  *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B.  Time-Barred Claims**

Baker claims that the Senior Manager's September 2003 decision to promote Kernan Martin, a white male, rather than herself, to the position of Administrative Service Manager

constitutes unlawful discrimination in violation of the Louisiana Employment Discrimination Law ("LEDL").  FedEx argues that to the extent Plaintiff alleges that the failure to promote was due to race discrimination or unlawful reprisal, or that it constituted intentional infliction of emotional distress, that claim is time-barred.

The Court agrees with FedEx. The Fifth Circuit has made clear that a one-time employment event, such as demotion or failure to promote, is "the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued."  *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998).  To the extent that any of Plaintiff's state law causes of action accrued before November 4, 2003 (one year before Plaintiff filed the instant lawsuit on November 4, 2004), these claims have prescribed under Louisiana's one-year liberative prescription period for torts, La. Civ.Code art. 3492, and/or the one-year prescriptive period provided in the LEDL, La.Rev.Stat. § 23:303(D).

### C.     Claims Under LEDL

#### 1.     Prerequisites to Filing Suit

The LEDL states in pertinent part:

> A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action *shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action*, shall detail the alleged discrimination, and *both parties shall make a good faith effort to resolve the dispute prior to initiating court action*.

La.Rev.State. 23:303© (emphasis added).  FedEx asserts that Baker's LEDL claims related to incidents occurring after December 2003 should be dismissed because Plaintiff failed to satisfy her pre-litigation notice obligation.  While it is true that filing an EEOC charge satisfies this requirement (See *Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 889 (W.D. La. 2003)),

5

Baker's LEDL claims relating to incidents occurring after December of 2003 must be dismissed for the following reasons.

The two charges of discrimination filed by Baker in 2004 complain of discrimination because of race and gender; however, they do not describe any discriminatory action occurring after December of 2003. Therefore, FedEx had no notice of alleged acts occurring after December of 2003 - as required by statute. As for Baker's third discrimination charge, it does not describe any facts that support her claim that she was discriminated against based on her gender or race; the text of the charge deals solely with retaliation. Further, this third charge was filed *after* Plaintiff filed suit and clearly cannot serve as *pre-suit* notice. Thus, Plaintiff's LEDL race and gender claims that relate to actions that occurred after December 2003 are hereby dismissed.

### 2. Plaintiff's Claims Regarding Employment Actions - Other Than Discharge

Throughout her tenure with Defendant, Plaintiff made many complaints, which were documented. Plaintiff complained about working extended hours and about being expected to work extended hours - both on weekdays and weekends - when business required such extra work. She also complained about criticisms she received for some 293 service failures in 2003; however, she admittedly was not disciplined for those failures and admits that they were "significant." (See Exhibit 2 to Defendant's motion, p. 256). She complained about being counseled by the Senior Manager for her excessive absenteeism in December of 2003. Plaintiff also complained about the sick-pay practice at the New Orleans terminal; however, she admits that her complaint was addressed and handled by Defendant. (See Exhibit 2 to Defendant's motion, p. 302). Plaintiff complained about the Senior Manager's decision to assign her to work

as "gatekeeper," which she considered to be an undesirable assignment as it forced her to work outside in the sun.  However, it is not disputed that several white and black male managers were also asked to work as "gatekeeper," so that decision clearly was not based on race or gender. She also complained about the Senior Manager's decision to transfer her to the position of Inbound Preload Service Manager, as that position was a night-shift position.

Louisiana courts have routinely looked to federal jurisprudence in interpreting Louisiana's anti-discrimination laws, and this Court does the same.  *See, e.g., Smith v. Amedysis, Inc.* 298 F.3d 434, 448 (5th Cir. 2002).  Under the *McDonnell Douglas* standard, a plaintiff who alleges employment discrimination must first prove by a preponderance of the evidence a prima facie case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  To do so, the plaintiff must demonstrate that she (1) is a member of a protected class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) "others similarly situated were treated more favorably." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir.1999).  In the Fifth Circuit, only "ultimate employment decisions" such as "hiring, granting leave, discharging, promoting, and compensation" are actionable "adverse employment actions" under Title VII.[4]  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). In other words, an employment action that does not "'affect job duties, compensation, or benefits' is not an adverse employment action." *Id.* If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant "to

---

[4] The Court finds that the ultimate employment action standard is applicable to Plaintiff's discrimination claims - even after the Supreme Court's decision in *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006).  This Court interprets the *White* decision, which rejected this Circuit's "ultimate employment action" standard, only to apply to retaliation claims.  Thus, this Court finds that this standard is still applicable when considering discrimination claims like the ones at issue in this case. See *Cassey v. Coca-Cola Ent.*, 2006 WL 3862005, *4(W.D. La. Dec. 29, 2006).

7

articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Assuming the defendant provides such a reason, the plaintiff must then be provided "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (*citing McDonnell Douglas*, 411 U.S. at 802).

Here, this Court finds that Plaintiff cannot prove by a preponderance of the evidence a prima facie case of discrimination as the employment actions referenced in this section do not qualify as ultimate employment actions for Plaintiff's race or gender discrimination claims. For instance, the Fifth Circuit has determined that a mere change in or increase in hours - even if it results in an employee being switched to the night-shift, is merely an administrative decision and does not constitute an adverse employment action. *Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998). The Fifth Circuit has also determined that poor performance evaluations and criticism of an employee do not constitute ultimate employment decisions. *Messer v. Meno*, 130 F.3d 130 (5th Cir. 1997). Last, Baker's complaint about being assigned gatekeeper duty should be dismissed because she has failed to show that others similarly situated were treated more favorably. In fact, it is undisputed that both white and black managers were assigned the gatekeeper task, which required them to stand outside. (Exhibit 1 to Defendant's motion, ¶¶ 32). Specifically, before Baker was terminated, the following managers were assigned to work as gatekeepers: James Moore (white male); Byron Martinez (Hispanic male); Bob Deans (white male)**.** (Exhibit 1 to Defendant's motion, ¶¶ 33). Thus, Plaintiff fails to prove a prima face case of discrimination on all of her claims relating to the above employment decisions.

This Court finds that Plaintiff also fails to prove a prima face case of discrimination relating to her transfer to the night-shift position in the Preload department.  As the Fifth Circuit determined in *Benningfield*, a transfer to a night shift position does not necessarily constitute an ultimate employment decision.  157 F.3d at 377.   However, even if Plaintiff were able to set forth a prima facie case of discrimination as to this claim, Defendant has articulated a legitimate, non-discriminatory reason for transferring Plaintiff to the position in Preload.  The Senior Manager's decision to transfer Plaintiff to that position was based on Plaintiff's extensive experience in pick-up and delivery ("P&D") operations and her knowledge of the New Orleans service area and its drivers, which he reasoned would greatly benefit the Preload department. (Exhibit 1 to Defendant's motion, ¶ 51).  The Senior Manager intentionally did not transfer either of two less-senior employees to this position; however, he did not do so because they did not have the P&D experience Plaintiff had. (Exhibit 1 to Defendant's motion, ¶¶ 52-55).  Thus, Plaintiff's discrimination claim based on her transfer to the Preload department fails. The Court further finds that Plaintiff has failed to  put forth any evidence (other than naming two less-experienced managers in her same position that could have been transferred) to show that FedEx's stated reason is a pretext for the real (retaliatory) purpose.  Thus, this claims fails.

        **3.**     **Plaintiff's Discharge**

Here, even if Plaintiff satisfies her burden to establish a prima facie case (as described above), the Court finds that Defendant has articulated a legitimate non-discriminatory reason for her discharge. Plaintiff failed to report for her new position as Service Manager in the Preload department for three days in a row.  Thus, Defendant terminated Plaintiff for insubordination. Plaintiff cannot prove pretext as she failed to identify any other management employees who

refused direction to work three consecutive days of a newly assigned position.  Thus, there are no existing genuine issues of material fact, and Defendant is entitled to summary judgment as a matter of law.

> **D.     Intentional Infliction of Emotional Distress**

As previously mentioned, to the extent that Baker's intentional infliction of emotional distress claim is based on incidents that occurred prior to November 4, 2003, that claim has prescribed.  Thus, Baker's remaining intentional infliction of emotional distress claim can only be based on incidents that occurred between November 4, 2003 and October 20, 2004, when she was terminated.  FedEx contends that Baker's allegations do not rise to the level of intentional infliction of emotional distress.  This Court agrees.

An intentional infliction of emotional distress claim under Louisiana law requires that the plaintiff establish three elements:  (1)  that the conduct of the defendant was extreme and outrageous; (2)  that the emotional distress suffered by the plaintiff was severe; and (3)  that the defendant desired to inflict severe emotional distress or knew that such distress would be substantially certain to result from the conduct.  *White v. Monsantso Co.*, 585 So.2d 1205, 1209 (La. 1991).  Summary judgment is mandated if a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Baker has failed to establish at least two of the required elements of proof for intentional infliction of emotional distress.

Plaintiff has failed to establish the first element, which requires a showing that the conduct of Defendant's employees was extreme or outrageous. The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

10

decency and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *White*, 585 So.2d at 1209. Additionally, Louisiana courts have found that much more severe behavior than that alleged by Plaintiff does not rise to the level of extreme or outrageous. *Id.* at 1205 (La.1991) (concluding that a profane tirade that resulted in plaintiff's hospitalization was not extreme or outrageous); *Beaudoin v. Hartford Accident & Indemnity Co.*, 594 So.2d 1049 (La.App. 3 Cir.1992) (concluding that a supervisor yelling and swearing at employee was not extreme or outrageous).

This Court notes that it is not extreme or outrageous conduct for FedEx to manage its business. Just because Baker did not like some of the management decisions that were made (i.e., transferring her temporarily to a night shift position; not allowing her to leave early on a Friday, and requiring her to work a weekend every now and then) does not mean that she can succeed with an emotional distress claim. See *Richardson v. Home Depot USA*, 808 So.2d 544, 548 (La. App. 1 Cir. 2001). Holding otherwise would open the legal system up to hundreds of thousands of "emotional distress" claims brought by disgruntled employees who, for example, disagreed with their bosses' management decisions. In this Court's opinion, the management at FedEx was extremely patient with Baker's constant complaints about what can only reasonably be considered as legitimate business management decisions and her perpetual poor attitude and insubordination. Because Baker does not allege conduct outrageous enough to support recovery for an intentional infliction of emotional distress claim, this Court concludes that FedEx's motion for summary judgment should be granted in this regard.

Plaintiff has also failed to establish the second element (whether the emotional distress

11

suffered by the Plaintiff was severe).  The Court concludes that Baker's conclusory complaints of headaches, stress, and impaired confidence do not rise to the required level of "severe."  See *Mayes*, 292 F. Supp.2d at 897 (restless nights, tears, and anxiety attacks will not support an award of compensatory damages for emotional distress when no showing is made of level of emotional disturbance); *Hitt v. Connell*, 301 F.3d 240 (5th Cir. 2002) (hurt feelings, anger, and frustration are part of life and are not the types of emotional harm that support an award of damages).  Instead, there must be a "specific discernable injury" to the plaintiff's emotional state that is proven with evidence regarding the nature and extent of the harm. *Brady v. Fort Bend County*, 145 F.3d 691, 718 (5th Cir.1998). To meet this burden, a plaintiff is not required to submit corroborating testimony (i.e., from a spouse or family member) or medical or psychological evidence. *Id.* at 720.  The plaintiff's own testimony, alone, may be sufficient to prove mental damages *if* the testimony is "particularized and extensive" enough to meet the specificity requirement.  *Id.*  A plaintiff's conclusory statements, alone, that she suffered emotional distress do not support an award of compensatory damages.  *Id.* at 718.

      The Court has not been presented with any corroborating evidence with respect to Baker's emotional distress. Absent some type of medical evidence, testimony from family members or co-workers, or evidence of physical manifestations of distress, this element is left unsatisfied.

      Further supporting this determination that Baker's emotional distress claim fails is the Court's conclusion that Baker also fails to establish the third element, which requires a showing that Defendant's employees intended or knew that their actions would bring about severe emotional distress. This element requires that "the actor desires to inflict severe emotional

distress or where he knows that such distress is certain or substantially certain to result from his conduct." *White*, 585 So.2d at 1210. "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.* Plaintiff merely glosses over this element in her Opposition with the following statement: "[w]e believe these examples of many shows a deliberate and intentional infliction of emotional and mental distress." (Opposition, p. 8). Such an unsupported statement, without more, does not suffice to establish intent. Baker has pointed to no specific instances which show FedEx's employees desired to inflict severe emotional distress on Baker or knew that such distress was certain or substantially certain to result from the conduct. Absent such a showing, this element is left unsatisfied.

Because Baker fails to establish all three of the required elements necessary to support an emotional distress claims under Louisiana law, this claim is dismissed.

### E. Retaliation Claim

To the extent that Plaintiff's reprisal/retaliation claim is based on events that occurred prior to November 4, 2003, that claim has prescribed for the previously stated reasons. Plaintiff's remaining reprisal claim can only be based on events that occurred between November 4, 2003 and October 4, 2004, when she was terminated.

The Louisiana Whistleblower Statute provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices. *Accardo v. Louisiana Health Services & Indemnity Company*, 943 So.2d 381, 383 (La. App. 1 Cir. 2006). Louisiana's Whistleblower Protection Act provides, in pertinent part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> .....
>
> C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
>
> (1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

La. R.S. 23:967. The *McDonnell Douglas* burden shifting framework applies to retaliation claims brought under Louisiana's whistleblower statute. *See Smith v. AT & T Solutions, Inc.*, 90 Fed. Appx. 718, 723 (5th Cir.1994). To establish a prima facie case of retaliation, the plaintiff must show: (1) that she engaged in an adverse activity protected by statute; (2) that she suffered an adverse employment action; and (3) that a causal connection existed between the protected activity in which she engaged and the adverse action. *Id.* If the plaintiff succeeds in establishing a prima facie case, the evidentiary burden shifts to the employer, who must then produce a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* The ultimate burden of proof, however, rests with the plaintiff. She must prove that the employer's articulated reasons for dismissal were merely a pretext for the retaliation; specifically, she must show that "but for" the protected activity, her employer would not have taken the adverse action. *Id.*

First, this Court determines that Plaintiff cannot establish a prima facie case of retaliation as she cannot show that she engaged in protected activity that concerned a violation of *Louisiana law* (as opposed to a violation of federal law). For instance, in September of 2003, Plaintiff complained to Defendant about a supervisor smelling like alcohol at work. However, her

concern was that the supervisor's conduct could violate a *federal* law - namely a Department of Transportation regulation.  Plaintiff's two EEOC charges that she filed before initiating this lawsuit alleged federal causes of action - not state.  She admits that she never threatened to disclose any violations of state law  to outside entities and admits that she never actually reported Defendant for any violations of state law.  (Exhibit 2 to motion, pp. 698-700).  Thus, Plaintiff cannot establish that she engaged in protected activity.

Despite this finding, if it were determined that Plaintiff did engage in protected activity covered by the Louisiana whistleblower statute as to her transfer to the Preload department or as to her termination, her claim still would fail as a matter of law.  As explained above, Defendant has articulated a legitimate, non-discriminatory reason for her transfer to Preload and for her termination.  Baker cannot establish that but for FedEx' s allegedly discriminatory purpose, she would not have been transferred and later terminated.  The record clearly establishes why the Senior Manager chose to transfer Baker to the Preload department.  It also supports FedEx's response of a nondiscriminatory purpose for terminating her for insubordination. The burden falls to Baker to establish that FedEx's stated reason is a pretext for the real (retaliatory) purpose. However, the Court finds that Baker has not come forward with any competent evidence of pretext. In fact, Baker has admitted that she engaged in the insubordinate conduct behavior that resulted in her termination. Clearly, a defendant cannot be rendered powerless to discharge an employee for inappropriate and insubordinate behavior (namely, not reporting for her new position for three consecutive days) simply because she had previously complained of certain conduct of the defendant. *See Smith v. Texas Dept. of Water Resources*, 818 F.2d 363, 366 (5th Cir.1987) ("[Title VII] was not intended to immunize insubordinate [or] disruptive ... behavior at

15

work."). Thus, because Plaintiff has failed to establish an essential element of her case, summary judgment as to this claim is appropriate.

   **F.**  **Hostile Work Environment Claim**

To prevail on a hostile work environment claim, a plaintiff must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; and (4) the harassment affected a term, condition, or privilege of employment. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir.2003); *Celestine v. Petroleos de Venezuella, S.A.*, 266 F.3d 343, 353-54 (5th Cir.2001). A plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Frank*, 347 F.3d at 138. The fact-finder must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Frank*, 347 F.3d at 138.

The Court finds, for the reasons explained throughout this order, that Baker was not mistreated by FedEx on the basis of her race or gender. Baker has not shown that any other employee of another race or gender who engaged in similar insubordinate actions was treated any differently. Further, the Court finds that the "harassment" Baker alleged to have occurred at the hands of FedEx and its employees was neither severe nor pervasive. Thus, Baker's harassment claims and all claims asserted by her in this action fail as a matter of law and should be dismissed.

### IV.     CONCLUSION

Considering the foregoing, **IT IS ORDERED** that Defendant's **Motion for Summary Judgment (Rec. Doc. No. 81)** should be and is hereby **GRANTED.**  Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 26th day of February, 2008.

_____
**KURT D. ENGELHARDT**
**United States District Judge**